<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| D.M. & L.M. o/b/o E.M., LEARNING CENTER FOR EXCEPTIONAL CHILDREN,<br><br>　　　　　　Plaintiffs,<br><br>　　　　v.<br><br>NEW JERSEY DEPARTMENT OF EDUCATION, et al.,<br><br>　　　　　　Defendants. | Civil Action No. 14-4620 (ES)<br><br>OPINION |

<u>SALAS, DISTRICT JUDGE</u>

**I.　INTRODUCTION**

　　Plaintiffs D.M. and L.M. (the "Plaintiff Parents"), on behalf of their minor daughter, E.M., and the Learning Center for Exceptional Children ("LCEC") (collectively, "Plaintiffs"), bring this action under the Individuals with Disabilities Education Act (the "IDEA"), 20 U.S.C.A. § 1400 *et seq.*, against the New Jersey Department of Education ("NJDOE"), Linda Chavez—Supervisor of Child Study in the Passaic County Office of the NJDOE, and Peggy McDonald—Director of the Office of Special Education Programs of the NJDOE (collectively, "Defendants"). (D.E. No. 1, Verified Complaint, ("Compl.")). The matter came before the Undersigned on an emergent basis as an order to show cause. (D.E. No. 1-4, Plaintiffs' Brief in Support of Order to Show Cause, ("Pl. Br.")).

　　In their three-count Complaint, Plaintiffs seek a declaratory judgment and injunction against Defendants, focusing primarily on the Individualized Education Program ("IEP") of E.M. (Compl. ¶¶ 131-44). Specifically, as to D.M. and L.M., Plaintiffs seek an injunction against the

NJDOE and Linda Chavez "from enforcing N.J.A.C. 6A:14-4.7(a) in a manner that precludes LCEC from implementing the mainstreaming component of E.M.'s IEP." (*Id.* ¶ 138). As to LCEC, Plaintiffs seek an injunction against the NJDOE and Peggy McDonald to prevent them from "continuing to keep LCEC on conditional approval status." (*Id*. ¶ 141(c)).

But, after this Court ordered supplemental briefing on new arguments raised by Plaintiffs' Counsel during oral argument on the emergent motion, Plaintiffs submitted an amended order, seeking only that "Defendants are preliminarily enjoined from interfering with LCEC's implementation of E.M.'s Individualized Education Plan and all Individualized Education Plans of students that contain a mainstreaming component, such that LCEC shall be permitted to implement same as written." (D.E. No. 16-3, Proposed Form of Order for a Preliminary Injunction, ("Amended PI Order") at 1-2).[1]

In opposition, Defendants primarily argue that this Court lacks subject matter jurisdiction over Plaintiffs' claims. (D.E. No. 9, Brief in Support of Defendants' Opposition to Plaintiffs' Application for Injunctive Relief, ("Def. Op.")). Specifically, as to Count I, Defendants argue that the Court has no subject matter jurisdiction because the Plaintiff Parents failed to exhaust their administrative remedies under the IDEA. (Def. Op. at 12-17). As to Count II, Defendants argue that the Court has no subject matter jurisdiction because LCEC lacks standing under the IDEA. (Def. Op. at 18-23).

Pursuant to the stay-put provision of the IDEA,[2] the Court hereby GRANTS Plaintiffs' request and issues a *limited injunction* against Defendants as it relates *only* to E.M. To be sure,

---

[1] The Court notes, however, that Plaintiffs' Counsel did not waive his arguments regarding the lifting of the conditional approval status. (*See* D.E. No. 16-1, Aug. 6, 2014 Letter from Raquel S. Lord).

[2] Section 1415(j) of the IDEA was formerly Section 1415(e)(3) under IDEA's predecessor, the Education for All Handicapped Children Act ("EHA"). As such, all cited cases prior to the July 1, 2005 effective date of the most recent IDEA reauthorization, will cite to EHA's § 1415(e)(3), but the statutory language remains the same.

the analysis below applies to Plaintiffs D.M. and L.M. o/b/o E.M., and not Plaintiff LCEC or any other LCEC student.

## II.  PROCEDURAL BACKGROUND

On July 23, 2014, Plaintiffs filed the instant motion for emergent relief with its Verified Complaint. (*See* D.E. No. 1). That same day, the Court heard oral argument on the order to show cause, and denied Plaintiffs' motion for a temporary restraining order. (*See* D.E. No. 3). On August 4, 2014, the Court heard oral argument on the instant motion for a preliminary injunction. (*See* D.E. No. 15). At oral argument, Plaintiffs' Counsel raised new arguments not addressed in the moving papers. As a result, the Court ordered supplemental briefing on the newly raised arguments.[3]

## III.  FACTUAL BACKGROUND

Primarily at issue in this dispute is the mainstreaming component of E.M.'s IEP. As such, the factual background will be limited to E.M. and her IEP. Beyond that, the facts are well known to the parties and are thoroughly described in the papers docketed in the matter.

D.M. and L.M. are the parents of 10-year-old E.M. (Compl. ¶ 20). In September 2014, E.M. will be entering the fourth grade at LCEC. (*Id.*). After being classified as "Multiply Disabled," E.M. was placed at LCEC in January 2011, pursuant to an IEP developed by an IEP team, which included her parents, in her home district of Hoboken, New Jersey. (*Id.* ¶ 21-22). E.M.'s IEP "calls for her to [be] integrated with regular education students in a small classroom at TLC [Today's Learning Center] with a low student-to-teacher ratio." (*Id.* ¶ 25). TLC is a "private regular education school" housed in the same building as LCEC. (*Id.* ¶ 37).

---

[3] The Court ordered supplemental briefing pursuant to its "inherent power to control its docket so as to promote fair and efficient adjudication." *Rolo v. Gen. Dev. Corp.*, 949 F.2d 695, 702 (3d Cir. 1991).

In light of "E.M.'s particular social/emotional needs, the mainstreaming component of the program, which has been a part of her IEP since enrolling at LCEC, is essential to E.M.'s education." (*Id*. ¶ 29). The IEP team "is in agreement that LCEC is the most appropriate placement for E.M., as the mainstreaming component is a large part of what E.M. needs to be successful." (*Id*. ¶ 32). LCEC was "specifically selected as the out-of-district educational placement for E.M. due to her unique academic and social/emotional needs." (*Id*. ¶ 23).

On December 2, 2013, "LCEC received a letter from the Interim Executive [Passaic] County Superintendent, Scott Rixford . . . [which] required LCEC, for the time in its history, to provide a statement of assurance that non-public school students from TLC are not in class with public school students from LCEC." (*Id*. ¶ 58) (internal quotations omitted). LCEC never provided the statement of assurance because it felt "compliance with such statement by LCEC would cause LCEC to violate the IDEA because mainstreaming is required to the extent possible, in order to provide student with disabilities with an education in the least restrictive environment." (*Id*. ¶ 59).

As a result, "at the insistence of the [NJDOE], LCEC has provided written assurance that it will not implement any aspects of a student's IEP that calls for academic mainstreaming as of July 1, 2014." (*Id*. ¶ 33).

Such inability to be mainstreamed, pursuant to her IEP, is the reason D.M. and L.M., on behalf of E.M., bring the instant action.

## IV. LEGAL STANDARD

In deciding to issue a preliminary injunction, "a district court must carefully weigh four factors: (1) whether the movant has shown a reasonable probability of success of the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting

preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest." *Gerardi v. Pelullo*, 16 F.3d 1363, 1373 (3d Cir. 1994).

Plaintiff bears the burden of showing that the factors weigh in favor of granting the injunction. *Kos Pharms. Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). "Only if the movant produces evidence sufficient to convince the [court] that all four factors favor preliminary relief should the injunction issue." *Opticians Ass'n of Am. v. Independent Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990). Additionally, the Third Circuit has repeatedly held that a preliminary injunction is an "extraordinary remedy" that "should be granted only in limited circumstances." *Kos Pharms. Inc.*, 369 F.3d at 708 (citation omitted).

V.   **DISCUSSION**

Under the IDEA, all students are entitled to a free appropriate public education ("FAPE"). *See* 20 U.S.C. § 1412. To deliver FAPE and address all the particular needs of disabled students, the IDEA requires local education agencies ("LEA") to develop IEPs in conjunction with each disabled student and her parents. *See e.g. Komninos by Komninos v. Upper Saddle River Bd. of Educ.*, 13 F.3d 775, 778 (3d Cir. 1994).

In addition, "20 U.S.C. §§ 1400–85, gives parents the right to an impartial due process hearing on complaints regarding the educational placement of their handicapped children, *id.* § 1415(b)(2), and to state or federal judicial review of final administrative decisions, *id.* § 1415(e)(2)." *Drinker by Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 863 (3d Cir. 1996).

Furthermore, the IDEA requires that during the course of administrative and judicial proceedings, "the child *shall* remain in the then current educational placement." *Susquenita Sch. Dist. v. Raelee S. By & Through Heidi S.*, 96 F.3d 78, 82 (3d Cir. 1996) (emphasis in original)

(citing § 1415(e)(3)). This requirement has come to be known as the IDEA's "pendent placement" or "stay-put" provision. *Id.* The stay-put provision, functions, "in essence, as an automatic preliminary injunction." *Drinker*, 78 F.3d at 864 (internal citation omitted). The Supreme Court has described the stay-put provision as "unequivocal . . . the child shall remain in the then current educational placement." *Honig v. Doe*, 484 U.S. 305, 323 (1988).

Especially pertinent to the instant case, in the context of a preliminary injunction, the stay-put provision "substitutes an absolute rule in favor of the status quo for the court's discretionary consideration of the factors of irreparable harm and either a likelihood of success on the merits or a fair ground for litigation and a balance of hardships." *Drinker*, 78 F.3d at 864 (internal quotations and citations omitted). As such, the Court will focus its preliminary injunction analysis on the stay-put provision and its applicability to the instant case.

### A. Subject Matter Jurisdiction Relating to D.M. and L.M. o/b/o E.M. (Count I)

#### 1. Parties' contentions

As a preliminary matter, the Court notes that there is no case factually similar to the instant case. As properly noted by Plaintiffs' Counsel, "there is no case that addresses the issue of standing when a school, a private school is saying the state agency responsible for education is looking to block us from providing the education to which these children are guaranteed under federal law." (August 4, 2014 Transcript, ("Tr.") at 8:15-19).

Defendants challenge Plaintiff Parents' standing to bring suit for failure to exhaust administrative remedies pursuant to the IDEA. (Def. Op. Br. at 12). Defendants contend that before seeking relief from this Court under the IDEA, Plaintiff Parents must exhaust their administrative remedies. (*Id.*). And, because they have failed to do so, they have no standing before this Court. (*Id.*).

Plaintiff Parents, on the other hand, argue that they are excused from any need to exhaust their administrative remedies. (D.E. No. 10, Plaintiffs' Reply Brief in Further Support of Order to Show Cause, ("Pl. Reply") at 1).[4] In support, Plaintiffs highlight the Third Circuit's exceptions to the exhaustion requirement: (1) "where exhaustion would be futile or inadequate"; (2) "where the issue presented is purely a legal question"; or (3) "when exhaustion would work severe or irreparable harm upon a litigant." *Komninos,* 13 F.3d at 778 (internal citations and quotations omitted). Specifically, Plaintiffs argue that (1) exhaustion would be futile, (2) the issue before the Court is a purely legal one, and that (3) requiring exhaustion would cause irreparable harm to Plaintiffs. (Pl. Reply at 3-6).

As to futility, Plaintiffs contend that they will have to refile this same action, if as expected, the "Commissioner rules against LCEC on the administrative appeals." (*Id.* at 4). Alternatively, if the "Commissioner rules unexpectedly in LCEC's favor, the parents and LCEC will still be forced to refile this same action in this Court, as the administrative proceedings will not resolve the ultimate question presented in this lawsuit—that is, whether prohibiting LCEC from mainstreaming per an IEP is permissible under the IDEA." (*Id.*).

Furthermore, Plaintiffs contend that no administrative record would resolve the issue before the Court, nor would a due process proceeding under the IDEA provide any evidence "as to what other schools or programs, if any, could appropriately educate E.M., as all stakeholders—the parents, the resident school district, and the PSSD [private schools for students with disabilities]—agree that LCEC remains the most appropriate placement for E.M." (D.E. No. 16, Plaintiffs' Supplemental Brief in Further Support of Order to Shown Cause, ("Pl. Supp. Br."), at 7).

---

[4] The parties do not dispute that Plaintiff Parents failed to file a prior action with the NJDOE or a petition for due process hearing. (*See* August 4, 2014 Transcript ("Tr.") at 9:2-6).

Finally, and most pertinent to the below analysis, Plaintiffs contend that "E.M.'s current educational program must be continued pending resolution of this lawsuit." (Pl. Supp. Br. at 2). Plaintiffs urge the Court to consider the "important public policy rationale for the stay-put provision, and enter an order requiring that E.M. continue to be educated at LCEC pursuant to her current IEP pending resolution of the underlying litigation by this Court." (*Id.* at 5).

Defendants fail to adequately respond to this argument. Instead, they argue exhaustion anew, and make mere mention of the "stay-put order [as] a remedy that is available through administrative procedures and can be applied for." (D.E. No. 18, Opposition Letter to Plaintiffs' Supplemental Brief in Further Support of its Order to Show Cause, ("Def. Ltr. Op.") at 7).

The Court focuses its analysis on the stay-put argument because it deals directly with the injunctive relief presently sought by Plaintiffs. After all, the stay-put provision, functions, "in essence, as an automatic preliminary injunction." *Drinker*, 78 F.3d at 864 (internal citation omitted).

### 2. Analysis

The *Honig* case is the seminal case on the stay-put provision. In *Honig*, the Supreme Court found that the stay-put provision prohibited state or local school authorities from unilaterally excluding disabled children from the classroom while the parents of those disabled children were engaged in judicial proceedings. *See generally* 484 U.S. 305 (1988). The Court neatly summarized the mandate of the IDEA and its procedural safeguards, including the stay-put provision:

> As a condition of federal financial assistance, the [IDEA] requires States to ensure a "free appropriate public education" for all disabled children within their jurisdictions. In aid of this goal, the Act establishes a comprehensive system of procedural safeguards designed to ensure parental participation in decisions concerning the education of their disabled children and to provide administrative

> and judicial review of any decisions with which those parents disagree. Among these safeguards is the so-called "stay-put" provision, which directs that a disabled child "shall remain in [his or her] then current educational placement" pending completion of any review proceedings, unless the parents and state or local educational agencies otherwise agree.

*Id.* at 308.

The lower court in *Honig* permanently enjoined the school district from "effecting any other change in the educational placement of any such child without parental consent pending completion of any [IDEA] proceedings." *Id.* at 316. Though *Honig* is factually distinguishable from the instant case, the holding is clear, and the policy behind the stay-put provision is broad enough to find it applicable to a disabled student and her IDEA challenge to the NJDOE's mainstreaming prohibition.

The Third Circuit has approvingly applied the *Honig* holding to cases in this District. The Circuit approved a district court's finding that "the IDEA required [school district] to maintain and support [disabled student's] continued placement at [PSSD] pending the outcome of the second due process hearing and the subsequent appeals to the administrative appeals panel and the district court." *Drinker*, 78 F.3d at 863. Though the instant case does not involve a dispute between a school district and a disabled student over its proper placement, it does involve a challenge brought by a disabled student regarding her IDEA rights. The fact that the Defendant is a state department of education, as opposed to a local educational agency, is immaterial. The IDEA and its protective safeguards make it clear that "all handicapped children, regardless of whether their case is meritorious or not, are to remain in their current educational placement until the dispute with regard to their placement is ultimately resolved." *Id.* at 864.

The dispute at issue here is not squarely about E.M.'s placement at LCEC, though Defendants do indeed call into question E.M.'s current placement at LCEC in light of LCEC's

unapproved status. (Def. Ltr. Op. at 5).[5] The dispute is, however, about the type of education she is receiving pursuant to her federally-mandated FAPE. The service, or lack thereof, that E.M. is receiving, i.e, mainstreaming, is being disputed by the present parties. And such entitlement to disputed services is at the heart of Congress's enactment of the IDEA and its corresponding safeguards, such as the stay-put provision. *See Pardini v. Allegheny Intermediate Unit*, 420 F.3d 181, 188 (3d Cir. 2005).

In fact, Defendants concede the availability of a stay-put remedy, but only as it relates to an "*ALJ* saying this child needs to stay in this placement and receive the type of educational programming that her IEP currently provides pending result of litigation." (Tr. 28:4-12) (emphasis added). It appears as though Defendants, on the one hand, recognize that the stay-put provision mandates that E.M. "receive the type of educational programming that her IEP currently provides"—to be mainstreamed—pending the result of this litigation, but view the remedy as one able to be granted by an administrative law judge, and not a federal judge.

Unfortunately, Defendants do not further address this issue in their supplemental briefing and fail to adequately address it in their response to Plaintiffs' supplemental brief, even after the Court explicitly ordered that the stay-put argument, advanced by Plaintiffs during oral argument, be fully briefed and fleshed out. (*See* Tr. 36:21-25; 37:1-3; 176:22-25; 178:14-25; 179:1-8; 181:9-20). The sole mention of the stay-put provision in Defendants' supplemental brief is that a "stay-put order is a remedy that is available through administrative procedures and can be applied for."

---

[5] "Although Plaintiffs contend that they and the District agree on E.M.'s placement at LCEC/TLC, their only support for this argument is that the District created E.M.'s current IEP. However, the District created that IEP in December 2013, two (2) months prior to the time NJDOE confirmed that LCEC was "mainstreaming" students in violation of its approval as a PSSD. There has been no evidence presented that the District still agrees with this IEP or that it even knows that LCEC is unapproved to provide the type of educational programming that E.M.'s IEP requires." (Def. Ltr. Op. at 5).

Notwithstanding Defendants' failure to adequately rebut Plaintiffs' argument, the Court agrees with Plaintiff that stay-put protection is automatic under federal law. (*See* Tr. 30:4-6). And, based on the many cases cited above, it is clear that a District Court can issue an injunction based on the stay-put provision of IDEA. *See, e.g., Honig*, 484 U.S. at 606; *Drinker*, 78 F.3d at 864; *Zvi D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982).

Moreover, requiring Plaintiffs to go through the administrative proceedings simply to obtain a stay in proceedings would be putting form over substance. To be clear, as articulated by Judge Bassler, the "language of 1415(j) is unequivocal and admits of no exceptions . . . stay put provision is designed to ensure stability and consistency in a disabled child's education when that consistency may otherwise be elusive." *K.T. ex rel. S.W. v. W. Orange Bd. of Educ.*, No. 01-3208, 2001 WL 1715787, at *2 (D.N.J. Oct. 23, 2001) (internal quotations and citations omitted).

Simply put, E.M.'s IEP mandates mainstreaming. (Compl. ¶¶ 25-30). If the NJDOE is going to prohibit LCEC from mainstreaming E.M., then E.M. is entitled to challenge such prohibition that is allegedly violating her federally-mandated FAPE. The Court makes no decision as to the validity of that challenge, but it is clear based on binding precedent, that E.M. is entitled to continue receiving the mainstreaming component of her IEP until the challenge is resolved. It is also clear that the "mainstreaming component is a large part of what E.M. needs to be successful." (Compl. ¶ 32).

After all, "the purpose of the 'stay put' is to preserve the status quo of the child's functioning placement and program until the *underlying IDEA litigation is resolved,* unless there is an effective waiver of the protection of the 'stay put'." *Drinker*, 78 F.3d at 865 (emphasis added in original) (internal citations and quotations omitted). Because the underlying dispute in this case will not be resolved at this preliminary juncture, and no waiver of the protection of the stay-put

provision has been articulated by Defendants, it is clear this Court should apply the stay-put protection and require that E.M. remain at LCEC and be educated pursuant to her IEP for as long as this litigation lasts. In sum, the Court views the prohibition on mainstreaming, as it relates to E.M., as a "unilateral change in [her] placement, prohibited by the [IDEA]." *See Zvi D.*, 694 F.2d at 906.[6]

Such a holding is especially appropriate in light of E.M.'s pending school start date in September, (*see* Tr. 41:23-25; 42:1), and the truncated manner in which the Court received parties' papers.[7] The Court anticipates receiving, and is prepared to adjudicate, Defendants' motion to dismiss upon receipt, but before then, E.M. is to continue receiving the mainstreaming education dictated by her IEP, in line with the true spirit of the IDEA and its stay-put provision.

VI. CONCLUSION

As set forth above, the Court hereby GRANTS, in limited fashion, Plaintiffs' motion for a preliminary injunction.[8] An appropriate Order accompanies this Opinion.

*/s/ Esther Salas*
**Esther Salas, U.S.D.J.**

---

[6] In *Zvi D.*—which has been approvingly cited by the Third Circuit, *see Drinker*, 78 F.3d at 864-65—the court held that "[u]nder the statute, the inquiry focuses on identifying the 'then current educational placement,' and, further, on who should pay for it, for implicit in the maintenance of the status quo is the requirement that a school district continue to finance an educational placement made by the agency and consented to by the parent before the parent requested a due process hearing. *To cut off public funds would amount to a unilateral change in placement, prohibited by the Act*." 694 F.2d at 906 (emphasis added) (citation omitted). Just as cutting off public funds amounted to a "unilateral change in placement," this Court similarly views E.M.'s inability to be mainstreamed, pursuant to her IEP, as a "unilateral change in [her] placement."

[7] The Court received a supplemental reply in further support of the order to show cause as recent as August 8, 2014. (*See* D.E. No. 20).

[8] Having decided to issue a limited injunction against Defendants in favor of Plaintiffs D.M. and L.M. o/b/o E.M., the Court need not determine at this preliminary juncture whether this Court has jurisdiction over LCEC and its claims. It is also unclear as to whether or not LCEC intends to proceed with its cause of action beyond this preliminary juncture. (*See* Tr. 7:8-25; 8:1-24; 24: 3-12).