<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **D.M. & L.M. o/b/o E.M., LEARNING CENTER FOR EXCEPTIONAL CHILDREN,** | |
| **Plaintiffs,** | **Civil Action No. 14-4620 (ES)** |
| **v.** | **OPINION** |
| **NEW JERSEY DEPARTMENT OF EDUCATION, et al.,** | |
| **Defendants.** | |

**SALAS, DISTRICT JUDGE**

This matter comes before the Court on Defendants' motion to dismiss Plaintiffs' Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (D.E. No. 33). Defendants are the New Jersey Department of Education ("NJDOE"); Linda Chavez, NJDOE Passaic County Supervisor of Child Study; and Peggy McDonald, NJDOE Director of the Office of Special Education Programs (collectively, "Defendants"). The Court has considered the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons below, the Court grants in part and denies in part Defendants' motion to dismiss.

## I. Factual and Procedural Background

The Court previously discussed the factual background of this case as it relates to Plaintiffs D.M. and L.M. (collectively, "Plaintiff Parents") and their daughter, E.M. (D.E. No. 23, Aug. 28, 2014 Opinion ("Op.") at 3-4). Therefore, the Court will primarily detail the factual background as

it relates to Plaintiff Learning Center for Exceptional Children ("LCEC") and will briefly restate the facts underlying Plaintiff Parents' claims.

### A.  Background Regarding LCEC

LCEC is a private school for students with disabilities ("PSSD").  (D.E. No. 1, Complaint ("Compl.") ¶¶ 2, 34).  LCEC's students have been classified by their local school districts as eligible to receive special education and related services pursuant to the Individuals with Disabilities Education Act ("IDEA") and New Jersey statutes and regulations.  (*Id.* ¶ 38).  Each student that attends LCEC has an Individualized Education Program ("IEP") that designates LCEC as his or her educational placement.[1]  (*Id.* ¶ 39).  LCEC currently maintains two programs, which are informally known as the "Speer program" and the "Scoles program."  (*Id.* ¶ 36).  The Speer program is located in Clifton, New Jersey and is housed in the same building as Today's Learning Center ("TLC"), a private, regular education school.[2]  (*Id.* ¶¶ 37, 45, 48).

To comply with the IDEA's mandate that students be educated in the "least restrictive environment," LCEC integrates students in the Speer program with TLC's students for non-academic activities, like lunch and recess.[3]  (*Id.* ¶ 40).  This practice is often referred to as "mainstreaming."  (*Id.* ¶ 17).  Currently, ten students in the Speer program have IEPs that also call for mainstreaming in their academic programs.  (*Id.* ¶ 41).  LCEC provides this academic mainstreaming by integrating the ten students, to a varied extent, with "the regular education population at TLC."  (*Id.* ¶¶ 41-43).

---

[1] An IEP is a written statement for a child with a disability. 20 U.S.C. § 1414(d)(1)(A).  An IEP includes statements of, among other things: "the child's present levels of academic achievement and functional performance," "measurable annual goals, including academic and functional goals," and "the special education and related services and supplementary aids and services . . . to be provided to the child." *Id.*

[2] The Scoles program is housed at a different location in Clifton.  (*Id.* ¶ 52).

[3] Section 1412(a)(5)(A) of the IDEA provides that, "[t]o the maximum extent appropriate, children with disabilities . . . are [to be] educated with children who are not disabled."  20 U.S.C. § 1412(a)(5)(A).

Before the start of the 2011-2012 school year, NJDOE required LCEC to apply for "non-temporary approval" of its Speer program.  (*Id.* ¶ 47).  Accordingly, LCEC submitted a "Comprehensive Program Proposal" to NJDOE, which explicitly listed the "[i]ntegration of disabled and non-disabled peers to promote appropriate social modeling and language" as a unique feature of LCEC's program.  (D.E. No. 1-6, Ex. A, Comprehensive Program Proposal at 7; *see also* Compl. ¶ 49).  By letter dated July 19, 2011, NJDOE approved LCEC for the 2011-2012 and 2012-2013 school years.  (D.E. No. 1-7, Ex. B, Approval Letter; *see also* Compl. ¶ 50).

In 2013, LCEC sought approval to relocate the Speer Program to 199 Scoles Avenue, where the Scoles program was housed.  (Compl. ¶ 53).  To that end, on August 5, 2013, LCEC submitted forms to NJDOE that detailed its academic programs.  (*Id.* ¶¶ 54-57; D.E. No. 1-8, Ex. C, Relocation Forms).  On December 2, 2013, during the course of the relocation approval process, the Interim Executive Superintendent for Passaic County, Scott Rixford, sent a letter to LCEC. (Compl. ¶ 58).  This letter requested "a statement of assurance that non-public school students from TLC are not in class with public school students from LCEC."  (D.E. No. 1-9, Ex. D, Dec. 2, 2013 Letter From Scott Rixford at 2; *see also* Compl. ¶ 58).

By letter dated December 19, 2013, LCEC responded to Rixford and challenged NJDOE's authority to prohibit it from mainstreaming.  (D.E. No. 1-10, Ex. E, Dec. 19, 2013 LCEC Response Letter ("LCEC Response Ltr.") at 2; *see also* Compl. ¶ 61).  In pertinent part, LCEC stated that it was "unaware of any code provision that prohibits the location of special needs children and typically developing children in the same classroom."  (Dec. 19, 2013 LCEC Response Ltr. at 2). LCEC further asserted that "the 'mainstreaming' of students with special needs is encouraged by federal and state education laws and regulations, and would be done pursuant to the students' Individualized Education Plans."  (*Id.*).

Roughly two months later, LCEC received a letter dated February 14, 2014 from Defendant Linda Chavez, stating that LCEC's application for relocation had been denied. (Compl. ¶ 63; *see also* D.E. No. 1-11, Ex. F, Feb. 14, 2014 Letter from Linda Chavez ("Chavez Ltr.") at 1). Chavez stated that the basis for the denial was LCEC's practice of "plac[ing] special needs children and typically developing children in the same classroom. . . . in violation of N.J.A.C. 6A:14-4.7(a)." (Chavez Ltr. at 1 (internal quotation marks omitted); *see also* Compl. ¶ 64). LCEC claims that, as a result of this denial, NJDOE "was now disapproving a program it had previously approved only two years prior, at which time the mainstreaming aspect of the Speer program was explicitly identified for the DOE, and the DOE approved it." (Compl. ¶ 66).

Subsequently, by letter dated March 18, 2014, Defendant Peggy McDonald advised LCEC that it was being placed on "conditional approval" status effective the date of the letter, in part because LCEC's mainstreaming practices violated N.J.A.C. § 6A:14-4.7(a). (D.E. No. 1-13, Ex. H, Mar. 18, 2014 Letter From Peggy McDonald ("McDonald Ltr.") at 1-2; *see also* Compl. ¶ 73). As a result of its conditional approval status, LCEC is prohibited from accepting new students. *See* N.J.A.C. § 6A:14-7.10(b)(1)(i) ("An approved private school which is issued a conditional approval status may not accept new students."); (*see also* Compl. ¶ 76; McDonald Ltr. at 1). As of the filing of this action in July 2014, at least one school district planned to remove three students from LCEC for the 2014-2015 school year because of LCEC's conditional approval status. (Compl. ¶¶ 83-84). LCEC claims that its conditional approval status has led to substantial financial loss. (*Id.* ¶¶ 89, 93).

LCEC initially appealed its conditional approval status to the New Jersey Commissioner of Education ("the Commissioner") by filing a motion for emergent relief on May 21, 2014. (*Id.* ¶ 111). This motion was transmitted to the New Jersey Office of Administrative Law ("OAL"),

and the Commissioner issued a final decision on August 10, 2014, denying LCEC's motion for emergent relief.  (D.E. No. 33-1, Memorandum of Law in Support of State Defendants' Motion to Dismiss the Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) ("Def. Mov. Br.") at 4-5).  In addition to filing the motion for emergent relief, LCEC also filed a Petition of Appeal with the Commissioner, challenging NJDOE's decision to place it on conditional approval status.  (Compl. ¶ 122).  This appeal was subsequently consolidated in the OAL with a related appeal, challenging NJDOE's denial of LCEC's request to relocate its program.  (*Id.* ¶¶ 99, 122-23).

In May 2015, LCEC and NJDOE filed cross-motions for summary decision regarding the pending petitions of appeal.  (*See* D.E. No. 39-1, Initial Decision of ALJ Bass ("ALJ Op.") at 3; *see also* D.E. No. 36, July 17, 2015 Joint Ltr.).  On August 14, 2015, Administrative Law Judge ("ALJ") Ellen S. Bass issued an Initial Decision dismissing the petitions of appeal, granting NJDOE's motion for summary decision, and denying LCEC's motion for summary decision.  (ALJ Op. at 12).  In pertinent part, the ALJ concluded that NJDOE's action "in March 2014, placing LCEC on conditional approval because children were improperly mainstreamed, was appropriate and consistent with law and regulation."  (*Id.* at 11).  On September 24, 2015, the Commissioner of Education adopted the ALJ's Initial Decision as the final decision in the matter.  (D.E. No. 45-1, Commissioner of Education Decision).

### B.   Background Regarding E.M.

Plaintiff Parents' daughter, E.M., was classified by her local school district as eligible to receive special education and related services under the category "Multiply Disabled."  (Compl. ¶ 21).  Since January 2011, E.M. has been a student at LCEC pursuant to an IEP that designates the school as her out-of-district educational placement based on her academic, social, and emotional needs.  (*Id.* ¶¶ 22-23).  Among other things, E.M.'s "IEP calls for her to [be] integrated

with regular education students in a small classroom at TLC with a low student-to-teacher ratio." (*Id.* ¶ 25).  According to Plaintiff Parents, "the mainstreaming component of [E.M.'s IEP] . . . is essential to E.M.'s education," (*id.* ¶ 29), and E.M.'s "IEP team is in agreement that LCEC is the most appropriate placement for E.M., as the mainstreaming component is a large part of what E.M. needs to be successful," (*id.* ¶ 32).

### C.   Procedural History

On July 23, 2014, after LCEC commenced administrative proceedings challenging its conditional approval status, Plaintiffs filed the instant, three-count Complaint.  (D.E. No. 1). Plaintiff Parents allege in Count One that Defendants NJDOE and Chavez have violated E.M.'s rights under the IDEA.  (Compl. ¶ 138).  In particular, Plaintiff Parents seek a judicial declaration that Defendants NJDOE and Chavez's "interpretation of . . . N.J.A.C. 6A:14-4.7(a) interferes with E.M.'s right under the [IDEA] to have her program implemented as formulated by [her] IEP." (*Id.* ¶ 138(a)) (italics omitted).  Additionally, Plaintiff Parents seek an injunction prohibiting Chavez and NJDOE "from enforcing N.J.A.C. 6A:14-4.7(a) in a manner that precludes LCEC from implementing the mainstreaming component of E.M.'s IEP." (*Id.* ¶ 138(b)) (italics omitted).  In Count Three of the Complaint, Plaintiff Parents assert they are entitled to attorneys' fees and costs pursuant to 20 U.S.C. § 1415(i)(3)(B) upon prevailing on their IDEA claim.  (*Id.* ¶¶ 142-144).

In Count Two of the Complaint, LCEC alleges that, by prohibiting the school from mainstreaming students in accordance with their IEPs, Defendants NJDOE and Chavez "have precluded LCEC from honoring its legal obligations under the IDEA and corresponding state law to implement students' IEPs." (*Id.* ¶ 140).  LCEC seeks a judicial declaration that Defendants NJDOE and Chavez's interpretation of N.J.A.C. § 6A:14-4.7(a) "interferes with LCEC's obligations under the IDEA," and that "the IDEA permits LCEC to implement IEPs that contain a

mainstreaming component." (*Id.* ¶¶ 141(a)-(b)). Additionally, LCEC seeks an injunction prohibiting Defendants NJDOE and McDonald "from continuing to keep LCEC on conditional approval status." (*Id.* ¶ 141(c)).

Plaintiffs filed the Complaint on an emergent basis, as they commenced this action on July 23, 2014 by way of an Order to Show Cause seeking temporary restraints and a preliminary injunction lifting LCEC's conditional approval status. (D.E. No. 1-5). That same day, the Court heard oral argument, denied Plaintiffs' request for temporary restraints, and set an expedited briefing schedule regarding the request for a preliminary injunction. (D.E. No. 3).

On July 28, 2014, Defendants moved to dismiss Plaintiffs' Complaint. (D.E. No. 5). However, on August 11, 2014, Defendants requested permission to withdraw their motion to dismiss and refile it at a later date. (D.E. No. 21). On August 14, 2014, the Court granted Defendants' request and further granted that Defendants had leave to refile their motion to dismiss following the resolution of Plaintiffs' pending preliminary injunction motion. (D.E. No. 22). On August 28, 2014, the Court granted a limited preliminary injunction in the form of a "stay-put order," which enjoined Defendants from interfering with LCEC's implementation of E.M.'s IEP during the pendency of the proceedings. (D.E. Nos. 23, 24). On December 12, 2014, the parties submitted a joint filing containing Defendants' refiled motion to dismiss and supporting brief, (D.E. Nos. 33, 33-1), Plaintiffs' opposition brief, (D.E. No. 33-4), and Defendants' reply brief, (D.E. No. 33-8). The matter is now ripe for resolution.

## II.    Legal Standards

### A.    Federal Rule of Civil Procedure 12(b)(1)

Federal courts have limited jurisdiction to adjudicate cases and controversies. *See* U.S. Const. art. III, § 2. The burden of demonstrating the existence of federal jurisdiction is on the

party seeking to invoke it.  *See Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006)).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) "attacks . . . the right of a plaintiff to be heard in Federal court."  *Cohen v. Kurtzman*, 45 F. Supp. 2d 423, 428 (D.N.J. 1999).  When ruling on such a motion, a distinction must be made between a facial and factual attack.  *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).  "[A] facial attack 'contests the sufficiency of the pleadings.'"  *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014) (quoting *In re Schering Plough Corp. Intron*, 678 F.3d 235, 243 (3d Cir. 2012)).  By contrast, "a factual attack concerns the actual failure of a [plaintiff's] claims to comport [factually] with the jurisdictional prerequisites."  *Id.* (quoting *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008) (alterations in original) (internal quotation marks omitted)).  If the Rule 12(b)(1) motion is a facial attack, "the court looks only at the allegations in the pleadings and does so in the light most favorable to the plaintiff."  *U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007) (citing *Mortensen*, 549 F.2d at 891).  On the other hand, when the Rule 12(b)(1) motion is a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."  *Mortensen*, 549 F.2d at 891.

Additionally, "court[s] can raise *sua sponte* subject-matter jurisdiction concerns."  *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 77 (3d Cir. 2003); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").  The same standard of review applies regardless of whether a court raises subject matter jurisdiction *sua sponte* or whether a party moves for dismissal pursuant to Rule 12(b)(1).  *Thompson v. Martinez*, No. 10-5990, 2012 WL 2990646, at *2 (D.N.J. July 20, 2012) (citing

*Orthopedic Specialists of N.J. PA v. Horizon Blue Cross/Blue Shield of N.J.*, 518 F. Supp. 2d 128, 131-32 (D.N.J. 2007)).

In the context of an IDEA claim, as is the case here, "the exhaustion of administrative remedies is a jurisdictional matter." *H.A. v. Teaneck Bd. of Educ.*, No. 09-3301, 2010 WL 891830, at *4 (D.N.J. Mar. 10, 2010). When claims fall within the ambit of the IDEA, plaintiffs fail to exhaust their administrative remedies, and no exception to the exhaustion requirement applies, a court must dismiss such claims for lack of subject matter jurisdiction. *Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 269, 281 (3d Cir. 2014).

### B.     Federal Rule of Civil Procedure 12(b)(6)

For a complaint to survive dismissal pursuant to Rule 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations contained in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2011). Where a complaint is subject to dismissal under Rule 12(b)(6), "a district court

must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245.

## III.    Discussion

### A.      Plaintiff Parents' Claim

In Count One of the Complaint, Plaintiff Parents allege that "[s]tates receiving federal funds for education must provide every disabled child with a 'free appropriate public education,' ('FAPE'), which is embodied in an Individualized Education Program." (Compl. ¶ 132). They assert that the "IEP is the mechanism through which an education is delivered to disabled children." (*Id.* ¶ 133). Plaintiff Parents allege that, "[i]n enforcing N.J.A.C. 6A:14-4.7(a) against LCEC in a manner that precludes it from implementing the mainstreaming component of E.M's IEP, the [NJDOE] and Linda Chavez have violated E.M.'s rights under the IDEA." (*Id.* ¶ 138) (italics omitted).

Defendants argue in relevant part that Count One should be dismissed because Plaintiff Parents have not stated a valid claim under the IDEA. (Def. Mov. Br. at 28). However, after reviewing the parties' arguments in connection with the motion to dismiss, the Court *sua sponte* raised the jurisdictional issue of whether Plaintiff Parents were required to exhaust their administrative remedies before pursuing their IDEA claim in federal court.[4] (D.E. No. 34, July 10, 2015 Letter Order). In response, both parties submitted supplemental letter briefs in support of their positions. The Court first addresses whether it has subject matter jurisdiction over Plaintiff Parents' claim, as that is a threshold issue.

Plaintiff Parents contend that there is no administrative process through which they can challenge NJDOE's interference with their daughter's rights under the IDEA. (D.E. No. 35,

---

[4] As noted in the Court's previous Opinion, it is undisputed that Plaintiff Parents have not filed a complaint with NJDOE or a petition for a due process hearing. (Op. at 7 n.4).

Plaintiffs' Reply Letter ("Pl. Reply Ltr.") at 1-2.  In the alternative, they argue that, even if they could avail themselves of the administrative process, their claim raises a pure question of law, which is a recognized exception to the exhaustion requirement.  (*Id.* at 2-4).  By contrast, Defendants assert that, to the extent Plaintiff Parents allege that NJDOE's regulation of LCEC interferes with E.M.'s IEP, the administrative process is the appropriate forum for their IDEA claim.  (D.E. No. 37, Defendants' Reply Letter ("Def. Reply Ltr.") at 3-4).  Specifically, they argue that this type of "claim falls squarely within the administrative procedure for a due process complaint."  (*Id.* at 3).  Furthermore, Defendants argue that the exceptions to administrative exhaustion do not apply here.  (*Id.* at 4-5).

Generally, parties are required to exhaust their administrative remedies before pursuing an IDEA claim in federal court.  Section 1415(i)(2) of the IDEA provides that "[a]ny party aggrieved by the findings and decision made" in a due process hearing "ha[s] the right to bring a civil action with respect to the complaint . . . in a district court of the United States."  20 U.S.C. § 1415(i)(2).  When a district court hears an action brought pursuant § 1415(i)(2), the court reviews the administrative record, hears any additional evidence submitted by either party, and is authorized to "grant such relief as the court determines is appropriate."  *Id.* § 1415(i)(2)(C)(i)-(iii).  Although § 1415(i)(2) grants subject matter jurisdiction to federal courts, "it is clear from the language of the [IDEA] that Congress intended plaintiffs to complete the administrative process before resorting to federal court."  *Komninos v. Upper Saddle River Bd. of Educ.*, 13 F.3d 775, 778 (3d Cir. 1994); *see also Batchelor*, 759 F.3d at 272 ("In the normal case, exhausting the IDEA's administrative process is required in order for the statute to grant subject matter jurisdiction to the district court." (internal quotation marks and alterations omitted)); *R.S. v. Glen Rock Bd. of Educ.*, No. 14-0024, 2014 WL 7331954, at *3 (D.N.J. Dec. 19, 2014) ("Individuals who wish to state a

claim under the IDEA, however, '*must* exhaust administrative remedies' prior to initiating a lawsuit." (quoting *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 270-71 (3d Cir. 2014))).

Strong policy justifications underlie the requirement that a party exhaust his or her administrative remedies before pursuing IDEA claims in federal court. *Komninos*, 13 F.3d at 778; *see also J.T. ex rel. A.T. v. Dumont Pub. Schs.*, 533 F. App'x 44, 53 (3d Cir. 2013) (stating that the "exhaustion rule serves a number of important purposes, including (1) permitting the exercise of agency discretion and expertise on issues requiring these characteristics; (2) allowing the full development of technical issues and a factual record prior to court review; (3) preventing deliberate disregard and circumvention of agency procedures established by Congress; and (4) avoiding unnecessary judicial decisions by giving the agency the first opportunity to correct any error").

Nonetheless, the Third Circuit has identified four exceptions to the administrative exhaustion requirement. *See Komninos*, 13 F.3d at 778.  These exceptions include situations "where: (1) exhaustion would be futile or inadequate; (2) the issue presented is purely a legal question; (3) the administrative agency cannot grant relief; and (4) exhaustion would cause severe or irreparable harm." *D.E. v. Central Dauphin Sch. Dist.*, 765 F.3d 260, 275 (3d Cir. 2014).  There is an overlap between the four exceptions, as courts have recognized that one ground for finding futility is where the issues involved are purely legal.  *See Lester H. by Octavia P. v. Gilhool*, 916 F.2d 865, 869 (3d Cir. 1990); *see also Old Bridge Bd. of Educ. v. R.D. ex rel.*, No. 15–3886, 2015 WL 4464152, at *4 (D.N.J. July 21, 2015) ("The purely legal exception to exhaustion is derived from the futility exception."); *D.D.*, *Kristi H. ex rel. Virginia H. v. Tri-Valley Sch. Dist.*, 107 F. Supp. 2d 628, 633 (M.D. Pa. 2000) ("The basis for the exception regarding purely legal questions is futility.").  "Absent the existence of any of those exceptions, failure to exhaust will deprive a federal court of subject matter jurisdiction."  *Central Dauphin Sch. Dist.*, 765 F.3d at 275.

Significantly, "[t]he party seeking relief from exhaustion bears the burden of proof." *L.V. ex rel. G.V. v. Montgomery Twp. Sch. Dist. Bd. of Educ.*, No. 13-2595, 2013 WL 2455967, at *4 (D.N.J. June 5, 2013) (citing *Honig v. Doe*, 484 U.S. 305, 327 (1988)).

Here, Plaintiff Parents argue that the administrative process does not permit them to challenge NJDOE's "interference with E.M.'s rights under the IDEA" because NJDOE cannot be a party at the administrative level.  (Pl. Reply Ltr. at 1-2).  The Court agrees.  On appeal of the preliminary injunction entered in favor of Plaintiff Parents, the Third Circuit held that, "the administrative process [in the instant case] would be unable to grant relief, and so exhaustion of that process is unnecessary." *D.M. v. New Jersey Dept. of Educ.*, No. 14-4044, 2015 WL 5255088, *4 (3d Cir. Sept. 10, 2015).  In particular, the Circuit concluded that "[n]either IDEA nor the New Jersey administrative code provides administrative means for a parent to challenge an action of a state agency, only to challenge action of a local public school system." *Id.*  As the Third Circuit noted, Plaintiff Parents are not challenging the local public school system—in fact, Plaintiff Parents agree with the local public school system.  Rather, it is the state agency's decision which Plaintiff Parents seek to challenge.  Accordingly, Plaintiff Parents' "failure to exhaust [the] administrative remedies does not deprive the District Court of jurisdiction." *Id.*

Next, the Court considers Defendants' arguments that Count One of the Complaint should be dismissed.  First, Defendants argue that the Court should dismiss Count One because Plaintiffs do not have a right to dictate the NJDOE's regulatory function.  (Def. Mov. Br. at 21-28).  According to Defendants, Plaintiff Parents' requested relief would require an order directing the NJDOE to approve TLC.  (*Id.* at 23-25).  By contrast, Plaintiff Parents assert that they are not seeking an order directing the NJDOE to approve TLC.  (Pl. Opp. Br. at 9).

Defendants' argument fails to consider, however, the totality of Plaintiff Parents' requested relief.  Pursuant to Count One, Plaintiff Parents seek a declaratory judgment, an injunction, and any other relief the Court deems just.  (Compl. ¶ 138(a)-(c)).  In particular, Plaintiff Parents seek declaratory judgment that Defendants' "interpretation of the regulation found at N.J.A.C. 6A:14-4.7(a) interferes with E.M.'s rights under the Individuals with Disabilities Act . . . ."  (Compl. ¶ 138(a)).  Defendants have failed to, however, establish why a declaratory judgment is unavailable to Plaintiff Parents under the IDEA.  Indeed, a declaratory judgment is an action where "any court . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  Whether or not Plaintiff Parents' other requested relief would require an improper order or regulation of the NJDOE is of no moment with respect to the declaratory judgment sought.[5]  A declaratory judgment does not require the Court to issue an order directing the action of the parties, it provides the Court the ability to "*declare* the rights and other legal relations" of the parties.  28 U.S.C. § 2201(a) (emphasis added); *see also Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 649 (3d Cir. 1990) ("The idea behind the [Declaratory Judgment] Act was to clarify legal relationships."); Black's Law Dictionary (10th ed. 2014) (defining declaratory judgment as a "binding adjudication that establishes the rights and other legal relations of the parties without providing for or ordering enforcement").  Accordingly, Defendants fail to establish why Count One should be dismissed.

Second, Defendants contend that the NJDOE's regulation of LCEC does not give Plaintiff Parents a right of action under the IDEA.  On appeal, the Third Circuit recently addressed whether Plaintiff Parents' claims falls within Section 1415 of the IDEA.   According to the Third Circuit,

> E.M. believes that the [NJDOE's] interpretation of the scope of LCEC's approvals
> is incorrect, arbitrary, and capricious. By imposing its interpretation of the scope of

---

[5] Any issues with the implementation or availability of Plaintiff Parents' requested relief are better suited for a summary judgment or trial, when the Court can consider matters outside of the Complaint.

> LCEC's approvals on E.M., the [NJDOE] would prevent E.M. from having her IEP implemented as worded: that she attend LCEC *and* integrated classes with students at TLC.  Because receiving an education in compliance with her IEP is a part of receiving a free appropriate public education under IDEA . . . the [NJDOE] is thus arguably interfering with her ability to receive a free appropriate public education.  The entire purpose of § 1415 is to provide parents "procedural safeguards with respect to the provisions of a free appropriate public education."

*D.M.*, 2015 WL 5255088, *5 (citing 20 U.S.C. § 1415(a)).  Additionally, the Third Circuit stated that:

> E.M's claim focuses on a responsibility of the state educational agency under IDEA: proper regulation of private school to which local public-school districts will send students with disabilities.  If the [NJDOE] fails to do this properly, it has directly breached one of its obligations under IDEA. . . . The fact that E.M. challenges the way in which the [NJDOE] performs one of its obligations as a state educational agency under IDEA demonstrates that E.M.'s claims falls within the ambit of § 1415.

*Id.* (citing 20 U.S.C. § 1415(a)(10)(B)).

Essentially, the Third Circuit held because Plaintiff Parents challenge the NJDOE's performance as a state agency under the IDEA and the effect it has on E.M.'s IEP, their claims fall within the purpose of Section 1415 of the IDEA.  *See id.*  Given the Third Circuit's interpretation of Plaintiff Parents' claims, the Court concludes that Plaintiff Parents have a private right of action under the IDEA.  Thus, the Court denies Defendants' motion to dismiss Count One of the Complaint.

Given that Count One of the Complaint survives, the Court concludes that Count Three—attorneys' fees for prevailing on Count One—may proceed as well.

### B.      LCEC's Claim

Defendants seek to dismiss Count Two of the Complaint on the grounds that LCEC, as a PSSD, does not have a private right of action under the IDEA.  (Def. Mov. Br. at 15-18).  In response, LCEC asserts that it has a private right of action because its claim is based on a particular

child's educational needs.  (D.E. No. 33-4, Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss ("Pl. Opp. Br.") at 15).  To resolve this motion to dismiss, the Court assesses whether a PSSD has a private right of action to sue a state education agency ("SEA") for an alleged violation of the IDEA.  For the reasons set forth below, the Court concludes that a PSSD does not have such a right of action and that LCEC's claim therefore must be dismissed.[6]

The Supreme Court has made clear that, "[l]ike substantive federal law, private rights of action to enforce federal law must be created by Congress."  *Alexander v. Sandoval*, 532 U.S. 275, 287 (2001) (citing *Touche Ross & Co. v. Redington*, 442 U.S. 560, 578 (1979)).  An express right of action exists where Congress explicitly provides for it in the text of the federal statute itself.  *Wisniewski v. Rodale, Inc.*, 510 F.3d 294, 297 (3d Cir. 2007); *Three Rivers Ctr. v. Hous. Auth. of the City of Pittsburgh*, 382 F.3d 412, 420 (3d Cir. 2004).  As the Third Circuit explained in *Three Rivers Center*, "[d]etermining whether a statute explicitly provides a private remedy involves a relatively straightforward inquiry.  A court must look to the text of the statute to see if it states, by its terms, that a private party may bring suit to enforce it."  382 F.3d at 420.

In the absence of an express right of action, "a court must next look to Congress's intent in enacting a statute to determine whether it would be appropriate to infer a right of action for the party seeking to enforce it."  *Am. Trucking Ass'n Inc. v. Del. River Joint Toll Bridge Comm'n*, 458 F.3d 291, 296 (3d Cir. 2006).  The Third Circuit employs a two-step inquiry for determining whether a federal statute provides an implied private right of action: "(1) whether Congress intended to create a personal right in the plaintiff; and (2) whether Congress intended to create a personal remedy for that plaintiff."  *McGovern v. City of Phila.*, 554 F.3d 114, 116 (3d Cir. 2009).

---

[6] Because the Court holds that LCEC lacks a private right of action under the IDEA, the Court does not address Defendants' alternative argument that "LCEC's appeal of its conditional approval status fails to state a claim upon which relief can be granted under the IDEA."  (*See* Def. Mov. Br. at 18).

An affirmative answer to both prongs of the inquiry is required in order to hold that an implied right of action exists in a federal statute. *Id.* Indeed, "[a] court may find an implied right of action 'only where it can *confidently conclude* Congress so intended.'" *Spencer Bank, S.L.A. v. Seidman*, 528 F. Supp. 2d 494, 500 (D.N.J. 2008) (quoting *Am. Trucking*, 458 F.3d at 303).

In accordance with these principles, the Court first looks to the language of the IDEA to determine whether the statute provides an express right of action for a PSSD to sue an SEA.

### i.    Express Right of Action

The IDEA guarantees that all disabled children are provided with a FAPE, 20 U.S.C. § 1412(a)(1)(A), and the statute "establishes an elaborate procedural mechanism to protect the rights of those individuals." *Komninos.*, 13 F.3d at 778; *see also S.N. v. Washington Twp. Bd. of Educ.*, No. 11-3876, 2012 WL 4753428, at *1 (D.N.J. Sept. 27, 2012) ("Congress enacted the IDEA as a means to ensure that states follow a mandate to provide a [FAPE] to all disabled children." (citing 20 U.S.C. § 1412(a)(1)(A))); *Rancocas Valley Reg'l High Sch. Bd. of Educ. v. M.R.*, 380 F. Supp. 2d 490, 496 (D.N.J. 2005) ("The express language of the IDEA exists to guarantee that children with disabilities receive a [FAPE].").

The IDEA contains no language expressly providing a PSSD with a private right of action to enforce a child's right to a FAPE. In fact, the language of the IDEA "strongly suggests that Congress intended to provide a private right of action only to disabled children and their parents." *Lawrence Twp. Bd. of Educ. v. New Jersey*, 417 F.3d 368, 371 (3d Cir. 2005). Section 1415(a) of the IDEA is entitled "establishment of procedures" and requires that procedures be established and maintained "in accordance with this section *to ensure that children with disabilities and their parents* are guaranteed procedural safeguards with respect to the provision of [a FAPE]." 20 U.S.C. § 1415(a) (emphasis added). Similarly, Section 1412(a)(6)(A) of the IDEA, which is

entitled "procedural safeguards," sets forth that "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by section 1415." 20 U.S.C. § 1412(a)(6)(A).  Thus, "the language in sections 1415 and 1412 explain[] that the procedural safeguards set forth in section 1415, which include the right to file suit under 1415(i)(2), are specifically designed to benefit disabled children and their parents." *S.C. v. Deptford Twp. Bd. of Educ.*, No. 01-5127, 2006 WL 1784591, at *6 (D.N.J. June 23, 2006); *see also Rancocas*, 380 F. Supp. 2d at 495 (stating that § 1415(a) "connects the right to [a FAPE to] children with disabilities and their parents").

The text and structure of Section 1415 further demonstrates that a PSSD does not have an express right of action, as the procedural devices detailed in this section "all derive from the premise that a *disabled child and his/her parents* should have access to procedures to enforce the child's right to a FAPE." *See Deptford*, 2006 WL 1784591, at *6 (emphasis added).  As noted above, Sectio 1415(a) indicates that the procedures outlined in that section serve as safeguards to protect a child's right to a FAPE. 20 U.S.C. § 1415(a).  Additionally, "section 1415(b), which sets forth the types of procedures required, limits most relief under those procedures to the parents of a disabled child." *Lawrence*, 417 F.3d at 371.  Among the procedures designed to protect a child's right to a FAPE is the opportunity to present a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a [FAPE] to such child."  20 U.S.C. § 1415(b)(6)(A).  Section 1415(f)(1), in turn, provides that, once a complaint is filed pursuant to section 1415(b)(6), the parents in the complaint are entitled to "an impartial due process hearing." 20 U.S.C. § 1415(f)(1)(A).  This hearing may occur "[i]f the local educational agency has not resolved the complaint *to the satisfaction of the parents*." 20 U.S.C. § 1415(f)(1)(B)(ii) (emphasis added).  As the district court explained in *Rancocas*, "when Congress created the federal right to a FAPE it vested the right in children with disabilities and

gave the parents procedural devices to enforce their child's rights.  This structure simply does not, at the same time, create a federal right in a LEA."  *See Rancocas*, 380 F. Supp. 2d at 495.  Likewise, the structure of section 1415 does not expressly create a private right of action in a PSSD.

Notably, the Third Circuit and several courts within this District have engaged in extensive statutory analysis of the IDEA and held that even a local education agency ("LEA") does not have an express private right of action to sue the state under the IDEA.  *See, e.g.*, *Lawrence*, 417 F.3d at 372 (holding that section 1415(b)(6), though "crafted more broadly than other subsections," is "at best ambiguous" and does not provide LEAs with express right of action against state); *Deptford*, 2006 WL 1784591, at *5 (rejecting defendants' interpretation of sections 1412 and 1415 and holding that "the language of those provisions is unclear at best and does not expressly provide a local agency with the authority to sue a state agency under the IDEA"); *Rancocas*, 380 F. Supp. 2d at 495-96; *accord Cnty. of Westchester v. New York*, 286 F.3d 150, 152 (2d Cir. 2002) ("[T]he text of the IDEA contains no language that explicitly provides a private right of action for Counties to challenge the State's compliance with its provisions."); *Andrews v. Ledbetter*, 880 F.2d 1287, 1289 (11th Cir. 1989) ("[N]othing indicates that Congress intended to grant an LEA statutory standing to bring suit to compel a state agency to fulfill its statutory duties.).

Based on the plain language and structure of the IDEA and a review of the relevant caselaw, the Court concludes that the statute provides a limited express right of action that does not extend to PSSDs.  LCEC has not pointed to any language within the IDEA that confers an express private right of action on a PSSD.  Nor has LCEC provided any basis for the Court to conclude that the Third Circuit's statutory analysis of the IDEA in *Lawrence* is inapplicable with respect to a PSSD's express right of action under the IDEA.  Therefore, the Court holds that LCEC does not have an

express right of action under the IDEA.  Accordingly, the Court will assess whether LCEC has an implied right of action under this statute.

### ii.    Implied Right of Action

For similar reasons, LCEC does not have an implied right of action.  As discussed above, whether a federal statute confers an implied right of action is primarily a matter of Congressional intent.  *Sandoval*, 532 U.S. at 287; *see also McGovern*, 554 F.3d at 119 (stating that, in determining whether an implied right of action exists, "Congressional intent [is] the 'sole touchstone of our inquiry'" (quoting *Wisniewski*, 510 F.3d at 303)).  Although there is no prescribed test for discerning Congressional intent, courts look at the text and structure of the relevant statute to determine whether Congress intended to create a personal right and remedy in the plaintiff.  *McGovern*, 554 F.3d at 119.

In responding to Defendants' motion to dismiss, LCEC does not address either prong of the implied right of action test outlined by the Third Circuit.  Instead, LCEC focuses its argument on differentiating this case from *Lawrence* and the cases cited in Defendants' brief.  (Pl. Opp. Br. at 15-16).  LCEC contends that *Lawrence* is distinguishable because the LEA in that case sought financial reimbursement from the state, whereas the present case involves a "controversy over a particular child" and concerns LCEC's ability to implement this child's IEP.  (*Id.* at 15) (internal quotation marks omitted).

In declining to find that LEAs had an implied private right of action under the IDEA, *Lawrence* and several other courts have taken note of the absence of a dispute about a child's educational needs.  *See, e.g.*, *Lawrence*, 417 F.3d at 371 (noting that the case was "not about a child's educational needs, but rather the [LEA]'s fiscal one" and "[a] budgetary dispute between local and state agencies is simply not among the private actions contemplated by the IDEA");

*Deptford*, 2006 WL 1784591, at *8 ("[T]he private right of action that [the LEA] is attempting to assert is a funding disagreement between local and state agencies that is not entirely consistent with the purpose of the IDEA."); *Rancocas*, 380 F. Supp. 2d at 496 (quoting *Lawrence* and holding that LEA did not have an implied right of action because the "matter [wa]s not about the 'child's educational needs, but rather the Township's fiscal ones'"); *Asbury Park Bd. of Educ. v. Hope Academy Charter Sch.*, 278 F. Supp. 2d 417, 422 (D.N.J. 2003) (holding no private right of action existed for LEA absent an underlying dispute over a particular child).

However, it does not logically follow from this caselaw that a PSSD has an implied right of action under the IDEA.  For one thing, LCEC overstates the importance of the subject matter of a party's dispute in the calculus of whether an implied right of action exists.  Courts that declined to find an implied right of action for an LEA have treated the subject matter of the LEA's dispute as one of several factors that weighed against finding an implied right of action under the IDEA. *See Deptford*, 2006 WL 1784591, at *8 (considering subject matter, Congressional intent, and the language and structure of the IDEA); *Rancocas*, 380 F. Supp. 2d at 496 (considering subject matter, Congressional intent, and statutory text); *Asbury Park*, 278 F. Supp. 2d at 422-23 (same). Moreover, LEAs and PSSDs are distinct entities, and there is no reason to think that a PSSD has an implied right of action against an SEA simply because there is a dispute over a child's educational needs.  In New Jersey, the LEA where a disabled child is domiciled is charged with the duty to provide a FAPE.  N.J.A.C. §§ 6A:14-1.1(d), 6A:22-3.1(a); *see also Lawrence*, 417 F.3d at 370 (citing N.J.A.C. § 6A:14-1.1(d) and noting that New Jersey vests LEAs "with the responsibility for providing and administering a FAPE, in accordance with the requirements of the IDEA").  LEAs play a critical role within the entire statutory scheme of the IDEA, given their "non-delegable obligation" to ensure that no disabled child's rights under the IDEA are infringed

upon. *P.N. v. Greco*, 282 F. Supp. 2d 221, 239 (D.N.J. 2003). By contrast, PSSDs enter the IDEA statutory scheme only when a public agency places or refers a disabled child there, 20 U.S.C. § 1412(a)(10)(B)(i), or when parents enroll their child in the school, § 1412(a)(10)(A)(i). Even where, as here, an LEA places a child at a PSSD pursuant to § 1412(a)(10)(B)(i), the SEA and LEA still retain ultimate responsibility for ensuring that the PSSD is in compliance with the IDEA. *See* § 1412(a)(10)(B)(ii) (providing that the SEA shall determine whether PSSDs meet standards applicable to SEAs and LEAs; 34 C.F.R. §§ 300.146 (detailing the responsibilities of SEAs when disabled children are placed in or referred to private schools by public agencies), 300.146 (same), 300.325 ("Even if a private school or facility implements a child's IEP, responsibility for compliance with [development and review of IEPs] remains with the public agency and the SEA.").

Additional factors weigh heavily against finding that LCEC has an implied right of action to bring suit under the IDEA. First, the Third Circuit's holding that the IDEA's language "strongly suggests that Congress intended to provide a private right of action only to disabled children and their parents," *Lawrence*, 417 F.3d at 371, applies with equal force to the Court's implied right of action analysis. *See Rancocas*, 380 F. Supp. 2d at 496 (explaining that the Third Circuit's congressional intent analysis in *Lawrence* was "particularly compelling" in determining that LEA had no implied right of action). Notably, parents retain their ability to enforce their child's rights under the IDEA regardless of whether their child is placed at a public or private school. Thus, the primary goal of the IDEA—*i.e.,* that all disabled children receive a FAPE—can be effectuated by parents regardless of the type of school in which a disabled child is placed. Second, LCEC is not alleging a systemic violation of the IDEA, nor does it purport to bring an action "*on behalf of* disabled students and their parents, who do have a private right of action under . . . the IDEA." *Cf.*

*N.J. Prot. & Advocacy, Inc. v. N.J. Dep't of Educ.*, 563 F. Supp. 2d 474, 488 n.3 (D.N.J. 2008) (emphasis added) (holding that statewide advocacy organizations had private right of action under the IDEA because suit was brought on behalf of all disabled children and their parents and organizations thus had representational standing).   Rather, LCEC's allegations focus on Defendants' regulation of the school, and LCEC has not pointed to any authority that a PSSD has an implied right of action in such a context.

The Court concludes that LCEC does not have an implied right of action under the IDEA. Because LCEC has neither an implied nor an express right of action, the Court dismisses Count Two of Plaintiffs' Complaint.   Since "granting leave to amend would be futile in the absence of a private right of action," the Court dismisses Count Two with prejudice.   *See Paredes v. Sallie Mae*, No. 11-2470, 2011 WL 5599605, at *5 (D.N.J. Nov. 16, 2011) (dismissing plaintiff's claims with prejudice due to the absence of a private right of action).

### C.    Abstention

In the alternative, Defendants argue that, if the Court finds that Plaintiffs have stated a valid claim, it should nevertheless abstain from hearing the matter because the claims can be resolved through state proceedings.   (Def. Mov. Br. at 29-33).   However, as the Third Circuit has stated, "the administrative process [in the instant case] would be unable to grant relief."   *D.M.*, 2015 WL 5255088, *4.   Accordingly, there is no state proceeding that would compel the Court to abstain. Therefore, the Court declines Defendants' request.

**IV.     Conclusion**

For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendants'

motion to dismiss.  An appropriate Order accompanies this Opinion.

_s/ Esther Salas_
**Esther Salas, U.S.D.J.**
